### Great Northern Refining Company, Plaintiff in Error, v. D. K. Jeffris, et al., Defendants in Error.

### Gen. No. 27,048.

1. APPEAL AND ERROR—*conclusiveness of finding of fact based on
conflicting evidence.* A judgment in detinue for defendants based
on a finding of fact that defendants were authorized to sell the
lumber sued for will not be disturbed on appeal where there is
substantial evidence that. defendants were authorized to sell the
lumber in question although there is some evidence that they were
only authorized to secure bids for its sale.

(Additional opinion on rehearing.)

2. APPEAL AND ERROR—*plea in bar to writ of error as plea of
release of error under former practice.* Before the amendment
of section 109 of the Practice Act in 1907, Cahill's Ill. St. ch. 110,

¶ 109, all pleas in bar to a writ of error were deemed pleas of release of errors, whether they set up a formal release, acceptance of the benefits of the judgment or decree, the statute of limitations or former adjudication, and where any such plea was held bad, a reversal of the judgment without a consideration on the merits was required.

3. APPEAL AND ERROR—*liberal construction of statute changing rule as to effect of failure to sustain plea in bar to writ of error.* Section 109 of the Practice Act adopted in 1907, Cahill's Ill. St. ch. 110, ¶ 109, providing that defendant shall not be deprived of the right to join in error because his plea of release of errors is adjudged bad or not sustained, being intended to remedy the harsh contrary rule theretofore in force, is to be liberally construed to carry out the legislative intent.

4. STATUTES—*construction of amendment in light of decisions existing at time of enactment.* In construing an amendment changing a rule of practice, it must be assumed that the legislature, in enacting it, had in mind the decisions of the court construing the rule prior to the adoption of the amendment.

5. APPEAL AND ERROR—*proper practice where plea of former adjudication filed to writ of error not sustained.* Since the adoption of section 109 of the Practice Act in 1907, Cahill's Ill. St. ch. 110, ¶ 109, the fact that a plea of former adjudication filed to a writ of error is not sustained does not require that the judgment be reversed without a consideration of the case on its merits; nor is failure to sustain it ground for entering judgment for plaintiff in error in the Appellate Court.

Error to the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Affirmed. Opinion filed October 18, 1922. Rehearing denied and additional opinion filed November 4, 1922.

MILLER, STARR, BROWN, PACKARD & PECKHAM, for plaintiff in error; THOMAS McCALL and HOPKINS, STARR & HOPKINS, of counsel.

OTTO GRESHAM and ORPHEUS A. HARDING, for defendants in error; OTTO GRESHAM, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

This is an action of detinue whereby plaintiff sought to recover 538,498 feet of lumber and $50,000

damages for the detention of it. The case was tried before the court without a jury. The court found the issues against the plaintiff and entered judgment accordingly, to reverse which plaintiff prosecutes this writ of error.

So far as it is necessary to state them, the facts are that on May 24, 1919, the parties entered into a written contract whereby the defendants were to construct a number of barges for the plaintiff upon certain conditions and for a specific consideration. Plaintiff, from time to time, made payments on account of the lumber and material purchased by the defendants, as provided by the contract, aggregating $29,611.93, and in addition paid defendants $7,100, being a portion of the initial payment specified in the contract. The barges were to be built at Cairo, Illinois, where defendants' plant for that purpose was located. There was some delay in the progress of the work owing to a revision of the contract and of the plans and specifications of the barges. Defendants did some work in the preparation of the lumber for the barges and in the alteration of defendants' plant at Cairo. Afterwards, in the fall of 1919, the building of the barges was abandoned, and negotiations were had between the parties concerning the disposition of the lumber and other materials at Cairo, and sometime during the early summer of 1920 the defendants sold the lumber and material, receiving for the lumber $25,236.13, and for the other material, such as bolts, nuts, etc., the sum of $7,157.36, which the defendants still retain, claiming that their damages occasioned by plaintiff's breach of the contract were in excess of the amount so realized.

The record is rather voluminous. Considerable evidence was introduced, and argument made, both at the trial court and in the briefs, on the question of the ownership of the lumber and material that defendants sold, and concerning other matters. A great many

findings of fact were submitted to the trial judge, some of which were held and others refused. There were also a number of propositions of law submitted by both sides, some of which were held and some denied. But in the view we take of the case, it will be necessary for us to consider but one question, and that is whether plaintiff authorized defendants to sell the lumber, as the latter contend, because it is conceded by plaintiff that if it authorized the sale of the lumber, plaintiff, of course, could not maintain its action of detinue.

Defendants' position is that at a meeting held on May 10, 1920, at which both parties to this suit were represented, plaintiff expressly authorized and directed defendants to sell the lumber. On this point plaintiff's contention is that at that meeting it authorized defendants to secure bids for the lumber which were to be submitted by defendants to plaintiff, but that no authority was given by the plaintiff to sell the lumber. On this point the evidence is sharply conflicting. For the defendants, three witnesses testified, D. K. Jeffris, E. J. Lundin and A. H. Hayward. Jeffris' testimony is that the parties were discussing the disposition of the lumber and that John E. Shatford, president of plaintiff company, came to defendants' office in the Lumber Exchange Building with one Sawyer, also connected with plaintiff; that prior to their arrival Jeffris directed Lundin and Hayward to sit outside of Jeffris' private office and listen to the conversation which was soon to take place and to make notes of what was said; that shortly thereafter Shatford and Sawyer came in and that Jeffris left the door to his private office open so that Lundin and Hayward could hear. Jeffris further testified that Shatford and Sawyer came into his private office and that the disposition of the lumber was discussed; that it was stated that since the barges were not to be built the lumber should be disposed of and that this was agreed

to; that Shatford asked Jeffris what he recommended in regard to it; that Jeffris suggested advertising the lumber for sale in lumber journals; that Shatford thereupon told him to sell the lumber and get as much as he could for it and that after it was sold they would meet again and divide the proceeds; that Jeffris stated there would be no division to be made, because defendants' damages resulting from plaintiff's breach of the contract were in excess of what might be realized from the sale; that Shatford replied that they would consider that question later. Jeffris is corroborated by Lundin and Hayward who testified that they sat outside the door to Jeffris' private office and listened to the conversation as directed. On the other hand, Shatford testified that at this conversation it was agreed that the lumber should be sold but that he told Jeffris to obtain bids for the lumber and submit them to him (Shatford), so that he could take the matter up with his company. Shatford positively denied that he told Jeffris to sell the lumber. Shatford is substantially corroborated by Sawyer. As tending to throw light upon the truth of what was said at this meeting, we find the testimony of Jeffris' son, who was in business with his father, to the effect that he had a conversation with Shatford in the first part of October, 1919, at Lexington, Ky.; that at that time Shatford told Jeffris to sell the lumber, and that five or six days later, Jeffris having returned to Chicago in the meantime, Shatford telegraphed him as follows: "Please sell no lumber until further advised. Unload all en route to Cairo. Will see you Tuesday."

Testimony on behalf of defendants further tend to show that on July 17, 1920, they wrote plaintiff advising that the lumber had been sold. Plaintiff denied having received this letter, and testimony offered on its behalf in that the first it knew of the sale of the lumber was on August 26, 1920, when plaintiff at once

repudiated the authority of the defendants to sell the lumber.

The court was asked by plaintiff to find as a fact that it did not authorize the defendants to sell the lumber. This finding was refused. But the court expressly found as a fact that the plaintiff did authorize defendants to make the sale. In this state of the record, we could not disturb the finding of the trial judge unless it was clearly and manifestly against the weight of the evidence. And upon a careful consideration of the evidence in the record it is clear that we would not be warranted in disturbing the finding of the court on this controverted point. This being true, it follows that the judgment of the municipal court of Chicago must be affirmed.

*Affirmed.*

ADDITIONAL OPINION ON REHEARING.

Plaintiff, in its petition for a rehearing, among other things, says that we failed to pass on its motion to reverse the judgment and to enter judgment in this court for $33,028.91, in favor of plaintiff, which motion was reserved to the hearing. When we handed down our opinion and affirmed the judgment of the trial court we considered that we had denied the motion, but since the matter is presented in the petition for rehearing we think we ought to say something specifically on the question.

To the writ of error in this case the defendant filed a plea in which it was set up that plaintiff ought not to maintain the writ of error because all of the errors assigned were adjudicated by this court on a former writ of error sued out to reverse the judgment in the same case and in which former proceeding this court affirmed the judgment of the trial court. To this plea defendants filed a replication wherein it was alleged that the judgment of the municipal court of Chicago

which was sought to be reversed in the instant case had not been affirmed by this court for the reason that the former writ of error was dismissed by this court because of the failure of plaintiff to file its abstracts and briefs within the time prescribed by the rules of this court.

After the plea and replication were filed the defendants moved that the writ of error be dismissed on account of the matters set up in the plea and replication. We took judicial notice of the records of this court and from them we found that the matters set up in the replication were true, and the motion was denied. Afterwards plaintiff made its motion to reverse the judgment and enter judgment in this court in its favor on the ground that since the plea filed by the defendants to the writ of error was held bad, the law required a reversal of the judgment without a consideration of the case upon its merits.

The law in force prior to July 1, 1907, would require a reversal of the judgment should a plea such as the one filed by defendants be held bad, and the case could not be considered on its merits. But on that date an amendment to the Practice Act became the law of this State. That amendment is section 109 of the Act [Cahill's Ill. St. ch. 110, ¶ 109] and it provides: "A plea of release of errors, though adjudged bad or not sustained, shall not deprive the defendant of the right to join in error." But the plaintiff contends that that section does not apply to the motion before us because the plea filed by the defendant to the writ of error was not a plea of release of errors but a plea of former adjudication, and his position is that as to such pleas the law is the same as it was before the amendment of 1907 above quoted. And as sustaining him in this he cites the case of *Tobias v. Tobias*, 193 Ill. App. 95. That case does sustain the contention of the plaintiff. It expressly holds that where a plea is filed to a writ of error and is held bad or not sustained, either be-

cause found bad in law or not sustained by the evidence, the judgment must be reversed without a consideration of the case upon its merits, unless the plea filed is a plea of release of errors as specified in section 109; and that where a plea is not such an one and it has been held insufficient, the judgment must be reversed and the case cannot be considered on its merits.

From our examination of the authorities we have been unable to find any case where that distinction has been made, but all of the cases both before and after the amendment, except the *Tobias* case, seem to consider that any proper plea filed to a writ of error which is not sustained is treated as a plea of release of errors. The Supreme Court of this State, prior to the amendment, held that where a plea of the statute of limitations to a writ of error was not sustained, the judgment of the trial court should be reversed without considering the merits of the case, and in support of its position cited cases where the pleas filed were technically pleas of release of errors.

In *Page v. People,* 99 Ill. 418, a judgment and order of sale against delinquent lands was sought to be reversed on error. In the Supreme Court the defendant in error filed two pleas; one of them was to the effect that the errors were released because after the judgment of sale was entered plaintiff in error had paid the taxes for which the land was ordered sold. The other plea set up that the matter had been adjudicated by the Appellate Court where another writ of error had been sued out to reverse the same judgment. The court held both pleas bad and reversed the judgment, and in doing so said (p. 426): "Where a plea of release of errors, on demurrer thereto, is adjudged bad, a judgment of reversal must be entered thereon. *Clapp v. Reid,* 40 Ill. 121; *Ruckman v. Alwood,* 44 Ill. 183; *Thornton v. Houtze,* 91 Ill. 217."

In each of the cases there cited, *Clapp, Ruckman* and *Thornton,* a plea was filed which was technically a

plea of release of errors and nothing else.

In *Mahony v. Mahony*, 139 Ill. 14, where a plea of the statute of limitations to a writ of error was adjudged bad, the judgment was reversed without a consideration of the merits of the case, and in support of this the court cites the cases of *Austin v. Bainter*, 40 Ill. 82 and *Thornton v. Houtze, supra*, in both of which cases the pleas to the writ of error were technically pleas of release of errors.

In *Kelly v. Jacobs*, 123 Ill. App. 251, the court in discussing the law, where a plea to the writ of error was held bad, said (p. 254) : "We know of no exception to the rule that upon demurrer to a plea of release of errors, whether by formal release, acceptance of the benefits of the judgment or decree, or the statute of limitations, final judgment must follow the judgment upon the issue of law thus tendered. In *Page v. People*, 99 Ill. 418, it was said (p. 426) : 'Where a plea of release of errors on demurrer thereto is adjudged bad, a judgment of reversal must be entered thereon. *Clapp v. Reid*, 40 Ill. 121; *Ruckman v. Alwood*, 44 Ill. 183; *Thornton v. Houtze*, 91 Ill. 217.'

"In *Martin v. Highways Com'rs Scotland Tp.*, 150 Ill. 158, it was said (p. 159) : 'If the plea is found bad, the judgment must be reversed without reference to the question whether the errors were well assigned.' "

In *Schaeffer v. Ardery*, 238 Ill. 557, the court said (p. 563) : "Prior to the enactment of the Practice Act of 1907, a defendant in error was never permitted to plead a release of errors, and, if the plea was adjudged bad or not sustained, afterwards join in error (*Austin v. Bainter*, 40 Ill. 82), but by section 109 of that Act [Cahill's Ill. St. ch. 110, ¶ 109] it is provided that a plea of release of errors, though adjudged bad or not sustained, shall not deprive the defendant of the right to join in error."

In *Laibe v. Smolikowski*, 152 Ill. App. 256, where the defendant in error filed four pleas to the writ of

error, some of which were technically pleas of release of errors and some of which were not, the pleas having been held bad, the court, under section 109 of the Practice Act [Cahill's Ill. St. ch. 110, ¶ 109] gave leave to join in error, if they should be so advised, and to file their briefs.

From the foregoing authorities it will be seen that prior to July 1, 1907, our Supreme Court and this court repeatedly and uniformly treated all pleas in bar to a writ of error as pleas of release of errors, whether they set up a formal release, acceptance of the benefits of the judgment or decree, the statute of limitations or former adjudication. And the rule requiring a reversal of the judgment without a consideration of the case upon its merits, where any such plea was held bad, was harsh and severe and often worked a great hardship on the defendant in error. To remedy this defect in the law the legislature, in 1907, enacted section 109 of the Practice Act [Cahill's Ill. St. ch. 110, ¶ 109]. Keeping in mind the purpose of the amendment, we think it should be liberally construed to carry out the intention of the legislature. By this amendment a defendant in error who files a plea in bar, which plea is held bad, is given an opportunity to have the case decided on its merits. In construing this amendment we must assume that the legislature had in mind the former decisions of the Supreme Court, where all pleas in bar to a writ of error were treated as pleas of release of errors. We think this construction gives effect to the intention of the lawmakers, and the intention of the lawmakers is the law. From such construction it follows that the motion of plaintiff must be denied.

Moreover, the motion of plaintiff would have to be denied because the motion is not only that the judgment be reversed, but that we here enter judgment for the plaintiff. This could not be done even if the law had remained as it was prior to 1907, because under

the law at that time where such a plea was held bad, the most that could be done was to reverse the judgment and remand the cause.

*Motion denied.*

THOMSON, P. J., and TAYLOR, J., concur.